**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| A.D. TRADE Belgium S.P.R.L.,<br><br>*Plaintiff*,<br><br>v.<br><br>The Republic of Guinea,<br><br>*Defendant*. | Civil Action No. 1:22-cv-00245 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR ENTRY OF DEFAULT JUDGMENT**

KOBRE & KIM LLP

1919 M Street NW
Washington, DC 20036

800 Third Avenue
New York, NY 10010

*Attorneys for Plaintiff
A.D. TRADE Belgium S.P.R.L.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..............................................................................................1

FACTUAL BACKGROUND ...............................................................................................3

    I.      Contract Leopard ...................................................................................3
    II.     The Elephant Protocol ..........................................................................5
    III.    Guinea Fails To Appear In This Action ...................................................6

ARGUMENT .....................................................................................................................7

    I.      The Court Has Jurisdiction over the Subject Matter and over Guinea. ...................8

          A.    The Court Has Subject Matter Jurisdiction Over This Action....................8
          B.    The Court Has Personal Jurisdiction Over Guinea. ...................................11
          C.    Venue is Proper in this Court. ..................................................................13

    II.     A.D. Trade Has Established Its Right to Relief Against Guinea. ..........................13

          A.    Legal Standard. ......................................................................................13
          B.    The 2020 Award. ....................................................................................15
          C.    The 2017 Award. ....................................................................................17
          D.    The 2017 Judgment. ...............................................................................19

    III.    The Interest Due to A.D. Trade .......................................................................22

          A.    The 2017 Award/2017 Judgment. ...........................................................23
          B.    The 2020 Award. ....................................................................................25

CONCLUSION..................................................................................................................26

## TABLE OF AUTHORITIES

**Cases**                                                                     Page(s)

*Africard Co. v. Republic of Niger,*
   210 F. Supp. 3d 119 (D.D.C. 2016) ......................................................................... 17

*Barot v. Emb. of the Repub. of Zambia,*
   785 F.3d 26 (D.C. Cir. 2015) .................................................................................. 12

*BCB Holdings Ltd. v. Gov't of Belize,*
   650 F. App'x 17 (D.C. Cir. 2016) ........................................................................... 19

*BCB Holdings Ltd. v. Gov't of Belize,*
   232 F. Supp. 3d 28 (D.D.C. 2017) .......................................................................... 23

*Belize Soc. Dev. Ltd. v. Gov't of Belize,*
   668 F.3d 724 (D.C. Cir. 2012) .......................................................................... 14, 17

*Bell Helicopter Textron, Inc. v. Islamic Repub. of Iran,*
   734 F.3d 1175 (D.C. Cir. 2013) ............................................................................... 9

*Commissions Imp. Exp. S.A. v. Republic of Congo,*
   916 F. Supp. 2d 48 (D.D.C. 2013) .......................................................................... 10

*Commissions Imp. Exp. S.A. v. Republic of Congo,*
   757 F.3d 321 (D.C. Cir. 2014) ..................................................................... 10, 19, 22

*Commissions Imp. Exp., S.A. v. Republic of Congo,*
   118 F. Supp. 3d 220 (D.D.C. 2015) ........................................................................ 21

*Compagnie D'Enterprises CFE, S.A. v. Republic of Yemen,*
   180 F. Supp. 2d 12 (D.D.C. 2001) .......................................................................... 21

*Compagnie Sahelienne d'Entreprise v. Republic of Guinea,*
   No. CV 20-1536 (TJK), 2021 WL 2417105 (D.D.C. June 14, 2021) ...................... 15

*Creighton Ltd. v. Gov't of State of Qatar,*
   181 F.3d 118 (D.C. Cir. 1999) ............................................................................ 9, 11

*Customs & Tax Consultancy LLC v. Democratic Republic of the Congo,*
   2019 WL 4602143 (D.D.C. Sept. 23, 2019) ............................................................ 16

*Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela,*
   146 F. Supp. 3d 112 (D.D.C. 2015) ........................................................................ 15

*H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,*
    432 F.2d 689 (D.C. Cir. 1970) ................................................................................. 8

*Han Kim v. Democratic People's Repub. of Korea,*
    774 F.3d 1044 (D.C. Cir. 2014) ............................................................................ 14

*Hecht v. Ludwig,*
    82 F.3d 1085 (D.C. Cir. 1996) ............................................................................... 8

*Jackson v. Beech,*
    636 F.2d 831 (D.C. Cir. 1980) ............................................................................... 8

*Jerez v. Repub. of Cuba,*
    775 F.3d 419 (D.C. Cir. 2014) ............................................................................. 11

*LLC Komstroy v. Republic of Moldova,*
    2018 WL 5993437 (D.D.C. Nov. 13, 2018) ........................................................ 21

*LLC SPC Stileks v. Republic of Moldova,*
    985 F.3d 871 (D.C. Cir. 2021) ............................................................... 11, 21, 22

*Masurovsky v. Green,*
    687 A.2d 198 (D.C. 1996) .................................................................................. 21

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614 (1985) ........................................................................................... 17

*Mohammadi v. Islamic Repub. of Iran,*
    782 F.3d 9 (D.C. Cir. 2015) .................................................................................. 8

*Moore v. CapitalCare, Inc.,*
    461 F.3d 1 (D.C. Cir. 2006) ................................................................................ 23

*Mwani v. bin Laden,*
    417 F.3d 1 (D.C. Cir. 2005) ................................................................................ 11

*Owens v. Republic of Sudan,*
    864 F.3d 751 (D.C. Cir. 2017) ............................................................................ 14

*Roth v. Islamic Republic of Iran,*
    78 F. Supp. 3d 379 (D.D.C. 2015) ...................................................................... 14

*Seetransport Wiking Trader v. Navimpex Centrala,*
    989 F.2d 572 (2d Cir. 1993) ............................................................................ 9, 10

*Seetransport Wiking Trader v. Navimpex Centrala*,
   29 F.3d 79 (2d Cir. 1994) ............................................................................... 20

*Selig v. Islamic Republic of Iran*,
   2021 WL 5446870 (D.D.C. Nov. 22, 2021) .................................................... *passim*

*Tatneft v. Ukraine*,
   771 F. App'x 9 (D.C. Cir. 2019) ...................................................................... 9

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
   487 F.3d 928 (D.C. Cir. 2007)................................................................. 14, 18

*Verlinden B.V. v. Central Bank of Nigeria*,
   461 U.S. 480 (1962) ......................................................................................... 10

*West Virginia v. United States*,
   479 U.S. 305 (1987) ......................................................................................... 22

## **Statutes**

9 U.S.C. § 201 ......................................................................................................... 1

9 U.S.C. § 207 .......................................................................................... 17, 18, 19

28 U.S.C. § 1330 ......................................................................................... 8, 10, 11

28 U.S.C. § 1391 ............................................................................................... 8, 13

28 U.S.C. § 1605 ........................................................................................... *passim*

28 U.S.C. § 1608 ........................................................................................... *passim*

28 U.S.C. § 1961 ................................................................................................... 28

D.C. Code § 15–361 ............................................................................................... 1

D.C. Code § 15–364 ............................................................................................. 21

D.C. Code § 15–367 ............................................................................................. 19

D.C. Code § 15–369 ............................................................................................. 20

**Rules**

Rule 55 of the Federal Rules of Civil Procedure ..................................................................... 1, 2, 7

**Other Authorities**

1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
   June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 ................................................................ *passim*

Restatement (Third) of the Foreign Relations Law of the United States § 481 .......................... 10

Plaintiff A.D. TRADE Belgium S.P.R.L. ("A.D. Trade") submits this memorandum of law in support of its Motion for Entry of Default Judgment pursuant to 28 U.S.C. § 1608 and Rule 55 of the Federal Rules of Civil Procedure, to obtain a judgment against the Republic of Guinea ("Guinea") based on two separate and final arbitration awards issued by the International Chamber of Commerce's International Court of Arbitration ("ICC") in Paris, France, pursuant to the Federal Arbitration Act, 9 U.S.C. § 201, *et. seq.* ("FAA"), and the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (the "New York Convention"), as well as a final and enforceable French court judgment, pursuant to District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act of 2011, D.C. Code § 15–361, *et seq*. ("D.C. Recognition Act").

## PRELIMINARY STATEMENT

Guinea owes more than US $70 million to A.D. Trade.  Guinea has refused to pay that debt, and now that Guinea has failed to timely respond to the Complaint, the Court should enter a default judgment against it.  As established by the evidence that A.D. Trade filed with its Complaint, specifically the Declaration of Cédric Fischer (ECF 3) and its corresponding exhibits (ECF 3-1 through 3-19), Guinea breached two commercial agreements with A.D. Trade, each of which included an arbitration clause, and arbitral tribunals were convened pursuant to those agreements by the ICC in Paris, France, which both found Guinea liable to A.D. Trade.  Guinea has never paid its debt, and A.D. Trade respectfully requests that the Court promptly enter judgment so that A.D. Trade can levy on Guinea's assets in the United States.

Under the first agreement, concluded in 2011, Guinea hired A.D. Trade to create a new intelligence unit for the country's newly elected President, and to provide support and training for that unit.  When Guinea failed to make the payments required by the agreement, A.D. Trade

referred the dispute to arbitration before the ICC.  In an award dated November 22, 2017 ("2017 Award"), the ICC tribunal found Guinea liable to A.D. Trade for a total of EUR 46,074,463.00 and US $157,402.50, plus interest that currently amounts to more than EUR 23,600,000.00.  On December 8, 2017, a French court, the Tribunal de Grande Instance of Paris, France, issued an order of recognition, or "exequatur," for the 2017 Award, resulting in an enforceable French judgment ("2017 Judgment").

In the second agreement, also concluded in 2011, Guinea hired A.D. Trade to acquire and deliver a transport aircraft, along with ground assistance equipment, and to train pilots and other personnel.  Again, Guinea failed to make the payments required by the agreement.  After A.D. Trade and Guinea negotiated and entered into a superseding agreement—and Guinea once more failed to make the required payments—A.D. Trade referred this dispute to arbitration before the ICC as well.  An ICC tribunal again issued an award, dated February 3, 2020 ("2020 Award," and together with the 2017 Award, the "Awards"), finding Guinea liable to A.D. Trade for another US $5,293,854.00.

In the years since the two tribunals rendered the Awards, Guinea has paid nothing to A.D. Trade.  Including interest, the total amount owed by Guinea to A.D. Trade today is more than EUR 69,400,000.00 and US $5,500,000.00.

Despite having been properly served in the manner required by the Foreign Sovereign Immunities Act ("FSIA"), Guinea did not respond to A.D. Trade's Complaint by the April 29, 2022 deadline or at any time thereafter, and the clerk entered a default on May 11, 2022.  ECF 16.  Now, for the reasons set forth below and based on the evidence submitted, A.D. Trade respectfully requests that the Court enter a default judgment against Guinea for the amounts awarded to A.D. Trade under the two Awards and the 2017 Judgment.

## FACTUAL BACKGROUND

A.D. Trade is a limited liability company incorporated under the laws of Belgium, which has its principal place of business in Mortsel, Belgium.  A.D. Trade specializes in the sale of security and military equipment.

Guinea breached two commercial agreements with A.D. Trade.  Both agreements, titled "Contract Leopard" and the "Elephant Protocol" respectively, included arbitration clauses governed by the New York Convention.

## I.   Contract Leopard

In 2011, Guinea entered into a written commercial agreement with A.D. Trade known as Contract Leopard to create an intelligence unit for the country's newly elected President, and to provide support and training for that unit.  ECF 3-2 ¶¶ 33, 56.  Contract Leopard included an agreement to arbitrate:  "All disputes and litigation arising from this contract shall be settled amicably.  Failing an amicable settlement, the two parties will rely on the Conciliation and Arbitration Rules of the International Chamber of Commerce of Paris [for settlement of the dispute] by three arbitrators in accordance with such rules." ECF 3-4 at Article 9.1.

On October 8, 2015, when Guinea failed to make the payments required by Contract Leopard, A.D. Trade referred the dispute to arbitration before the ICC in Paris, France.  ECF 3-2 ¶ 6; *see also id.* at p. 68.  Guinea was notified of the arbitration and participated through its counsel, DLA Piper.  *Id.* ¶¶ 5-6 .  After obtaining written submissions from both parties, the ICC tribunal heard witnesses and experts from both parties at a hearing that lasted April 18-20, 2017.  *Id.* ¶ 25. In an award dated November 22, 2017, the ICC tribunal found Guinea liable to A.D. Trade for a total of EUR 46,074,463.00 and US $157,402.50, plus interest.  *Id.* at pp. 68–69.  With respect to interest, the ICC tribunal awarded post-award interest at 10.3%, compounded annually, to run on

the largest portion of the 2017 Award, from October 6, 2016, until the 2017 Award is satisfied in full, as well as post-award interest at the standard French legal rate on its award of costs. *Id.* The interest award and the calculation of post-award interest are discussed further in Section III below.

On December 7, 2017, A.D. Trade commenced proceedings in the Tribunal de Grande Instance of Paris to enforce the 2017 Award in France against Guinea. ECF 3-8 at 1. On December 8, 2017, the Tribunal de Grande Instance issued an order of recognition, or "exequatur," for the 2017 Award, resulting in an enforceable French judgment. *Id.* at 1–2; *see also* ECF 3 ¶ 20. On March 6, 2018, A.D. Trade served Guinea with the exequatur. ECF 3-10; ECF 3-12. Under the laws of France, the exequatur is enforceable as of the date of its service on Guinea for the sum of money granted in the 2017 Award. ECF 3 ¶ 20. A.D. Trade can enforce the 2017 Judgment for 10 years, under Article L.111-4 the French Civil Enforcement Proceedings Code. Supplemental Declaration of Cédric Fischer ¶ 3 (June 10, 2022) ("Supp. Fischer Decl."). Therefore, A.D. Trade can enforce the 2017 Judgment in France for 10 years from the date of its service on Guinea, March 6, 2018. *Id.*

On May 17, 2018, Guinea applied to the Paris Court of Appeal to annul or set aside the 2017 Award and to vacate the 2017 Judgment. ECF 3-15 at 3. On April 13, 2021, the Paris Court of Appeal denied Guinea's application. *Id.* at 15. That decision made both the 2017 Award and the 2017 Judgment final and conclusive. Supp. Fischer Decl. ¶ 5. The time has elapsed for Guinea to seek any further relief from the 2017 Award or 2017 Judgment in the French Courts. *Id.*

Guinea has not paid A.D. Trade any of the amounts owed under the 2017 Award or the 2017 Judgment. ECF 3 ¶ 26.

## II.  **The Elephant Protocol**

In a second written commercial agreement that Guinea entered into with A.D. Trade, known as Contract Elephant, also concluded in 2011, Guinea hired A.D. Trade to acquire and deliver a transport aircraft (model CASA CN 235-220), along with ground assistance equipment, and to train pilots and other personnel.  ECF 3-17 ¶¶ 78, 92.

Again, Guinea failed to make the payments required by the agreement.  After A.D. Trade and Guinea agreed on a superseding agreement known as the Elephant Protocol ("Elephant Protocol"), Guinea once again failed to make the required payments.  ECF 3-19.  The Elephant Protocol included an agreement to arbitrate:  "In the event that the Parties fail to reach a resolution within one month of the request of the most diligent Party, the Dispute will be settled by means of an international arbitration conducted in accordance with the arbitration rules of the International Chamber of Commerce in force on the date of the introduction of arbitration[.]"  *Id.* ¶ 5.2.  The Elephant Protocol also included a "Waiver of privilege and immunity from jurisdiction" in which Guinea "expressly and definitively" waived "any immunity from jurisdiction and execution on all of its assets."  *Id.* ¶¶ 6 & 6.2.

On November 2, 2016, after Guinea failed to make the payments required under Elephant Protocol, A.D. Trade referred the dispute to arbitration before the ICC in Paris, France.  ECF 3-17 ¶ 8.  Guinea was notified of the arbitration and participated through its counsel DLA Piper, in the matter captioned *A.D. TRADE Belgium S.P.R.L. (Belgium) v. Republic of* Guinea, ICC Case No. 22374/DDA.  *Id.* ¶¶ 7, 18; *see also id.* at p. 1.  The ICC tribunal found that it had jurisdiction, *id.* ¶¶ 15, 236–40, and, after obtaining written submissions from both parties, heard experts from both parties at a hearing on January 29-30, 2019.  *Id.* ¶¶ 47–50.  In a final award dated February 3, 2020, the ICC tribunal concluded that while Contract Elephant and the Elephant Protocol were invalid,

A.D. Trade was entitled to restitution for the goods and services it had provided to Guinea under those agreements. *Id.* ¶¶ 252–299. Accordingly, the ICC tribunal found Guinea liable to A.D. Trade for US $5,293,854.00, including costs of US $232,000.00 "with interest at the legal rate under French law from the date of the receipt of this Award and until full payment." *Id.* at pp. 57–58.

Guinea has not paid A.D. Trade any of the amounts owed under the 2020 Award. ECF 3 ¶ 26.

## III.    Guinea Fails To Appear In This Action

On January 31, 2022, A.D. Trade commenced this action by filing a Complaint that seeks to recover the amounts due to it under the Awards and the 2017 Judgment. ECF 1; *see also* Declaration of Josef M. Klazen ¶ 3 (June 11, 2022) ("Klazen Decl."). On February 18, 2022, the Clerk of the Court certified transmission of service packets pursuant to 28 U.S.C. § 1608(a)(3) containing, *inter alia*, the Summons, Complaint, and Notice of Suit, together with certified French translations of each, to four different addresses belonging to the head of the Ministry of Foreign Affairs for Guinea. ECF 11, 11-1; *see also* Klazen Decl. ¶ 4.[1]

On February 28, 2022, A.D. Trade effected service of one of the packets by FedEx waybill numbered 776046250245 on the head of the Ministry of Foreign Affairs for the Republic of Guinea, pursuant 28 U.S.C. § 1608(a)(3). ECF 12 at 3; *see also* ECF 12-1 (tracking information), 12-2 (delivery confirmations); Klazen Decl. ¶ 5. A.D. Trade also served three additional sets of these papers on the head of the Ministry of Foreign Affairs for the Republic of Guinea on March 10, 2022, by FedEx waybills numbered 776046163746, 776046341335, and 776046298320. ECF 12

---

[1]     A complete list of the documents in A.D. Trade's service packets is contained in the A.D. Trade's March 18, 2022 Return of Service. ECF 12.

at 2; *see also* ECF 12-1, 12-2; Klazen Decl. ¶ 6.  The four service packets were directed to the head of the Ministry of Foreign Affairs at different addresses in Conakry, Guinea, one of which A.D. Trade had obtained from the U.S. Department of State.  Klazen Decl. ¶ 7.  A.D. Trade obtained the other addresses from another case in this District, where the claimant had served the head of the Ministry of Foreign Affairs of Guinea at those addresses and the Court thereafter entered default judgment against Guinea. *See id.* ¶ 8.  All four service packets were delivered and FedEx obtained a signature for receipt of each of them.  ECF 12-2.

Under 28 U.S.C. § 1608(d), Guinea was required to serve an answer or other responsive pleading within 60 days after service.  Based on the February 28, 2022 delivery of the first service packet, Guinea's answer to the Complaint had to be served on A.D. Trade by April 29, 2022. Klazen Decl. ¶ 9.  Guinea did not do so. *Id.*

On May 10, 2022, A.D. Trade requested that the Clerk of the Court enter a default by Guinea pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, as Guinea has failed to timely answer or otherwise respond to A.D. Trade's Complaint.  ECF 15; *see* Klazen Decl. ¶ 10. On May 11, 2022, the Clerk of the Court entered a default.  ECF 16; *see* Klazen Decl. ¶ 11.

As of the filing of this motion, Guinea has not paid any of debt owed to A.D. Trade, has not served an answer or other responsive pleading to A.D. Trade's Complaint, and has not had counsel enter an appearance on its behalf in this action.  Klazen Decl. ¶ 12.

## ARGUMENT

Under Rule 55(b)(2) of the Federal Rule of Civil Procedure, a court may enter a default judgment upon A.D. Trade's application.  Fed. R. Civ. P. 55(b)(2).  "[S]trong policies favor resolution of disputes on their merits," and so "'[t]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially

unresponsive party.'"  *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Because Guinea has not responded to this action, the Court should enter a money judgment against Guinea in favor of A.D. Trade in the full amounts of the 2017 Award and 2017 Judgment and the 2020 Award, including post-award interest calculated up until the date of the Court's judgment, plus post-judgment interest at the federal rate.  As of the date of this filing, the total amount of principal and interest is more than EUR 69,400,000.00 and US $5,500,000.00.  *See infra* at Section III (calculating interest).

I.   **The Court Has Jurisdiction over the Subject Matter and over Guinea.**

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1605(a), and personal jurisdiction over Guinea pursuant to 28 U.S.C. § 1330(b) given that A.D. Trade effected service under 28 U.S.C. § 1608(a)(3).  Venue is proper over foreign sovereigns like Guinea in this district court pursuant to 28 U.S.C. § 1391(f)(4).

A.   The Court Has Subject Matter Jurisdiction Over This Action.

The Court has an "affirmative obligation" to determine whether it has subject matter jurisdiction over the matter prior to the entry of default judgment.  *Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996).

Here, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1330(a), which provides "original jurisdiction" over "any nonjury civil action against a foreign state" asserting "any claim for relief in personam with respect to which the foreign state is not entitled to immunity" under the FSIA.  *Id.*  While the FSIA "establishes a general rule granting foreign sovereigns immunity from the jurisdiction of United States courts," there are "a number of exceptions" to that rule that apply here.  *See Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9,

8

13–14 (D.C. Cir. 2015).  A.D. Trade bears "the initial burden to . . . produc[e] evidence that an exception applies."  *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013).  Once Plaintiffs make this showing, "the sovereign bears the ultimate burden of persuasion to show the exception does not apply."  *Id.*

A.D. Trade has produced evidence that two FSIA exceptions apply here:  (1) the implied waiver exception under 28 U.S.C. § 1605(a)(1); and (2) the arbitration exception under 28 U.S.C. § 1605(a)(6)(B) and (D).

*First*, under the implied-waiver exception of 28 U.S.C. § 1605(a)(1), Guinea will not be "immune from [] jurisdiction" in any case "in which [it] has waived its immunity either explicitly or by implication."  As the D.C. Circuit has explained, "a sovereign, by signing the New York Convention, waives its immunity from arbitration-enforcement actions in other signatory states" in actions to confirm arbitration awards.  *Tatneft v. Ukraine*, 771 F. App'x 9, 10 (D.C. Cir. 2019) (citing *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999)); *see also Seetransport Wiking Trader v. Navimpex Centrala*, 989 F.2d 572, 577 (2d Cir. 1993).  Here, the implied-waiver exception applies because Guinea is a contracting party to the New York Convention and agreed to arbitrate in the territory of another contracting party to the New York Convention, namely France.  As a contracting party to the New York Convention, Guinea would understand that an arbitration award governed by that convention would be enforceable in any other contracting state.  Accordingly, Guinea impliedly waived its immunity from suit in actions arising from the arbitrations or the resulting Awards.[2]

---

[2]        Guinea also "expressly and definitively" waived "any immunity from jurisdiction and execution on all of its assets" in the Elephant Protocol.  ECF 3-19 ¶ 6 & 6.2.  While the ICC tribunal found that the Elephant Protocol was invalid, ECF 3-17 ¶ 244, this provision nonetheless reflects Guinea's intent to waive sovereign immunity in actions such as this one.

Relatedly, Guinea's implied waiver under 28 U.S.C. § 1605(a)(1) also provides this Court with subject-matter jurisdiction to recognize the French court's 2017 Judgment pursuant to the D.C. Recognition Act because the claims to recognize the 2017 Award and to recognize the 2017 Judgment (which permits enforcement of the 2017 Award in France) are closely related.  As the Second Circuit explained in *Seetransport*:

> Although the claim for enforcement of the arbitral award has been dismissed as time-barred, we nonetheless conclude that subject matter jurisdiction exists, under § 1330(a), with respect to the alternative cause of action seeking enforcement of the decision of the Court of Appeals of Paris [which had declined to vacate the arbitral award]. We note that unlike the recognition of arbitral awards, which is governed by federal law, the recognition of foreign judgments is governed by the state law. *See* Restatement (Third) of the Foreign Relations Law of the United States § 481 cmt. a (1987). Though governed by state law as to most substantive aspects, the cause of action to enforce the foreign judgment is within the scope of Navimpex's implicit waiver of sovereign immunity, and this cause of action also arises under federal law. *See Verlinden* [*B.V. v. Central Bank of Nigeria*], 461 U.S. [480,] 491-97, 103 S. Ct. [1962,] 1970-73. The cause of action is within the scope of the waiver because the cause of action is so closely related to the claim for enforcement of the arbitral award.

989 F.2d at 582-83; *cf. Commissions Imp. Exp. S.A. v. Republic of Congo*, 916 F. Supp. 2d 48, 51 (D.D.C. 2013) (finding foreign sovereign's explicit waiver of immunity to enforce an arbitration award extends to an action to recognize an English judgment that enforces the arbitration award), *aff'd as to this issue*, 757 F.3d 321 (D.C. Cir. 2014).

*Second*, under the arbitration exception of 28 U.S.C. § 1605(a)(6), Guinea is not immune from jurisdiction in an action to "enforce an agreement" to arbitrate or "confirm an award made pursuant to such an agreement to arbitrate" if that arbitration agreement is governed by "a treaty or other international agreement" calling for the enforcement of such awards, such as the New York Convention.  *Id.*

A.D. Trade has established the three "jurisdictional facts" necessary to prove jurisdiction under this exception:  "[i] the existence of an arbitration agreement, [ii] an arbitration award[,] and

[iii] a treaty governing the award." *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021) (citing 28 U.S.C. § 1605(a)(6)).  Here, Guinea entered into two agreements to arbitrate with A.D. Trade:  Contract Leopard and Elephant Protocol.  ECF 3-4; ECF 3-19.  The ICC tribunals entered Awards based on each of those agreements.  ECF 3-2; ECF 3-17.  And, "the New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception."  *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d at 123–24.  Guinea is therefore not immune from this action under the arbitration exception because A.D. Trade brings this action "to enforce an agreement" to arbitrate made by Guinea and "to confirm an award made pursuant to such an agreement to arbitrate," *see* 28 U.S.C. § 1605(a)(6), and because the agreements and awards are governed by the New York Convention.  *Id.* § 1605(a)(6)(B).  As explained above, Guinea is also subject to jurisdiction under subsection (D) of the arbitration exception because Section 1605(a)(1) applies.  *Id.* § 1605(a)(6)(D) (providing for jurisdiction to enforce arbitration agreement or confirm arbitration award if "paragraph (1) of this subsection [the implied-waiver exception] is otherwise applicable").

B.    The Court Has Personal Jurisdiction Over Guinea.

Guinea is subject to personal jurisdiction in this Court based on A.D. Trade's service of Guinea under the FSIA, which satisfies the "*prima facie* showing" required for this Court to enter a judgment against Guinea as an absent defendant.  *See Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005); *see also Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014).

By statute, "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title."  28 U.S.C. § 1330(b).  Because "[s]ubsection (a) provides the Court with subject matter jurisdiction," this means that personal jurisdiction over a foreign

sovereign "exists wherever the Court has subject matter jurisdiction and a plaintiff has effected service as required in 28 U.S.C. § 1608." *Selig v. Islamic Republic of Iran*, No. 1:19-CV-02889-TNM, 2021 WL 5446870, at *11 (D.D.C. Nov. 22, 2021).  Section 1608 "provides four methods of service in descending order of preference."  *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015).

Here, A.D. Trade effected service on Guinea pursuant to 28 U.S.C. § 1608(a)(3) and thereby established the Court's personal jurisdiction over Guinea.  ECF 12 at 3; *see also* ECF 12-1 (tracking information), 12-2 (delivery confirmations); Klazen Decl. ¶¶ 5-6.  Section 1608(a)(3) permits service "by sending a copy of the summons and complaint and a notice of suit . . . by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned."  A.D. Trade's service on Guinea in this manner satisfied Section 1608 because A.D. Trade could not serve Guinea pursuant to the first two methods of service specified in 28 U.S.C. § 1608(a)(1) or (a)(2) because no "special arrangement" governs service of process between the United States and Guinea and because Guinea is not a party to an international convention on service of process.

A.D. Trade effected service on four separate addresses for the head of the Ministry of Foreign Affairs for the Republic of Guinea.  ECF 12 at 3; *see also* ECF 12-1, 12-2; Klazen Decl. ¶ 6.  The packets contained all the documents required by 28 U.S.C. § 1608(a)(3) including the Summons, Complaint, and Notice of Suit, together with certified French translations of each.  ECF 11, 11-1; Klazen Decl. ¶ 4.  A.D. Trade effected service of one packet at an address provided to it by the U.S. Department of State, Embassy of the United States in Conakry, Guinea, and three additional packets at addresses that another creditor served Guinea and the Court entered default judgment against Guinea.  Klazen Decl. ¶¶ 7-8.

The first service packet was served on February 28, 2022, and the other three were served on March 10, 2022.  Accordingly, the 60-day period from service for Guinea to serve an answer or other responsive pleading has passed.  *See* 28 U.S.C § 1608(d) ("In any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section.").[3]

Because the Court has subject matter jurisdiction and A.D. Trade properly served Guinea, the Court has personal jurisdiction over Guinea.

C.      Venue is Proper in this Court.

Venue is proper in this Court because this action is against a foreign state.  28 U.S.C. § 1391(f)(4) ("A civil action against a foreign state as defined in section 1603(a) of this title may be brought . . . in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.").

## II.   **A.D. Trade Has Established Its Right to Relief Against Guinea.**

A.      Legal Standard.

Although the FSIA provides that a default judgment may not be entered against Guinea "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court," *see* 28 U.S.C. § 1608(e), the ample evidentiary record supplied by A.D. Trade easily establishes its entitlement to relief under the FAA, New York Convention, and D.C. Recognition Act.

---

[3]      A.D. Trade submits that the 60-day time period for Guinea to respond to the Complaint began to run on February 28, 2022.  But even if the Court were to calculate the period from March 10, 2022, the deadline for Guinea to serve its response would have been May 9, 2022. The Clerk of the Court entered Guinea's default on May 11, 2022.  ECF 16; Klazen Decl. ¶ 11.

The D.C. Circuit has left it to district courts to determine "how much and what kinds of evidence the plaintiff must provide" to satisfy Section 1608(e).  *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1046–51 (D.C. Cir. 2014).  "The evidence must consist of 'admissible testimony in accordance with the Federal Rules of Evidence,' and it must be sufficient for the court to come to the 'logical conclusion' that the defendant is responsible for the plaintiffs' injuries."  *Selig v. Islamic Republic of Iran*, 2021 WL 5446870, at *7 (quoting *Kim v. Democratic People's Republic of Korea*, 774 F.3d at 1049, 1051).  Uncontroverted factual allegations supported by admissible evidence may be taken as true.  *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 386 (D.D.C. 2015).  And Section 1608(e) "does not require a court to step into the shoes of the defaulting party and pursue every possible evidentiary challenge."  *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017), *vacated & remanded on other grounds sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020).  In a FSIA default proceeding, a court can find that the evidence presented is satisfactory "when the plaintiff shows 'her claim has some factual basis,' . . . even if she might not have prevailed in a contested proceeding."  *Id.*.

Federal district courts have "little discretion in refusing or deferring enforcement of foreign arbitral awards:  the [New York] Convention is 'clear' that a court 'may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.'"  *Belize Soc. Dev. Ltd. v. Gov't of Belize (Belize I)*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007)).  Article V of the New York Convention provides five such bases for refusing to enforce an award:

> a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention, art. V(1)(a)–(e).  "The party resisting confirmation . . .bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies." *Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112, 120 (D.D.C. 2015).

Finally, "[t]he New York Convention also provides that recognition and enforcement of an arbitration award may be refused for . . . two reasons, even if the respondent does not assert them[.]" *Compagnie Sahelienne d'Entreprise v. Republic of Guinea*, No. CV 20-1536 (TJK), 2021 WL 2417105, at *4 (D.D.C. June 14, 2021).  Under Article V(2), recognition and enforcement is not possible "if the competent authority in the country where recognition and enforcement is sought finds that:  (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or (b) The recognition or enforcement of the award would be contrary to the public policy of that country."  New York Convention, art. V(2).

B.   The 2020 Award.

A.D. Trade has presented satisfactory evidence the 2020 Award is a valid arbitration award, ECF 3-17, made pursuant to a valid agreement to arbitrate that is governed by the New York

Convention, ECF 3-19 ¶ 5.2.  In an arbitration in which both parties participated, the ICC tribunal concluded that Guinea owed restitution to A.D. Trade by failing to pay for A.D. Trade's work to acquire and transport an aircraft to Guinea and to provide Guinea the related training and equipment.  ECF 3-17 ¶¶ 78, 92, 316.  The Court should thus enforce the 2020 Award because A.D. Trade has provided satisfactory proof for the claims in its Complaint.  *See Customs & Tax Consultancy LLC v. Democratic Republic of the Congo*, No. CV 18-1408 (RJL), 2019 WL 4602143, at \*6 (D.D.C. Sept. 23, 2019).

The only grounds for declining to enforce an arbitration award under the New York Convention are found in Article V of that treaty, and none of them would apply here, even if Guinea had appeared in this action to assert such grounds.  The 2020 Award found that there was a valid agreement to arbitrate, and so Guinea could not plausibly argue that there was no valid agreement arbitrate.  *Compare* ECF 3-17 ¶¶ 15, 236–40, *with* New York Convention art. V(1)(a) (permitting court to decline enforcement in absence of agreement to arbitrate).  Nor can Guinea claim that it lacked proper notice or opportunity to be heard, given that it appeared in the arbitration through counsel.  *Compare* ECF 3-17 ¶¶ 7, 18, *with* New York Convention art. V(1)(b).  The 2020 Award also squarely resolved issues within the scope of the arbitration agreement.  *Compare* ECF 3-19 ¶ 5.2, *with* New York Convention art. V(1)(c).  And, as the 2020 Award explains, the tribunal followed the procedure set forth by the arbitration agreement.  *Compare* ECF 3-17 ¶¶ 47–50, *with* New York Convention art. V(1)(d).  Lastly, the 2020 Award is binding on Guinea, and it has not been set aside by any French court, which would be the only tribunal competent to do so.  *Compare* ECF 3 ¶ 25, *with* New York Convention art. V(1)(e).

Nor would either of Article V(2)'s bases for refusing to enforce an award apply to the 2020 Award.  A.D. Trade's dispute with Guinea concerns Guinea's breach of Contract Leopard and the

Elephant Protocol, and breach of contract disputes are "surely capable of settlement by arbitration in the United States." *See Africard Co. v. Republic of Niger*, 210 F. Supp. 3d 119, 127–28 (D.D.C. 2016).  Likewise, enforcing the 2020 Award would not be contrary to public policy given the "emphatic federal policy in favor of arbitral dispute resolution" that "appl[ies] with special force in the field of international commerce." *Belize I*, 668 F.3d at 727 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)).

The Court should therefore confirm the 2020 Award against Guinea pursuant to the New York Convention and 9 U.S.C. § 207, and enter a money judgment in favor of A.D. Trade and against Guinea in the amount of US $5,293,854.00, plus the appropriate interest.  *See infra* at Section III (calculating interest).

      C.      <u>The 2017 Award</u>.

A.D. Trade has also presented satisfactory evidence that Guinea breached Contract Leopard by failing to pay for A.D. Trade's work on a new intelligence unit in Guinea as well as provide support and training for that unit.  ECF 3 ¶ 6; ECF 3-2 ¶¶ 33, 56.  That evidence is contained in the same extensive declaration from A.D. Trade's counsel in the underlying ICC arbitration that produced the 2017 Award, and the 19 exhibits to that declaration.  *See* ECF 3-1 through 3-19; *see also supra* at 3-5.

In addition, none of the grounds for declining to enforce an arbitration award under Article V of the New York Convention would apply to the 2017 Award, even if Guinea had appeared in this action to assert such grounds.  The ICC tribunal in the 2017 Award found that there was a valid agreement to arbitrate, and so Guinea could not plausibly argue that there was no valid agreement arbitrate.  *Compare* ECF 3-2 ¶¶ 31-32, *with* New York Convention art. V(1)(a) (permitting court to decline enforcement in absence of agreement to arbitrate).  Nor can Guinea

claim that it lacked proper notice or opportunity to be heard, given that it appeared in the arbitration concerning the 2017 Award through counsel. *Compare* ECF 3-2 ¶¶ 5, 13, *with* New York Convention art. V(1)(b). The 2017 Award also squarely resolved issues within the scope of the arbitration agreement. *Compare* ECF 3-2 ¶¶ 31-32, *with* New York Convention art. V(1)(c). And, as the 2017 Award explains, the tribunal followed the procedure set forth by the arbitration agreement. *Compare* ECF 3-2 ¶¶ 31-32, *with* New York Convention art. V(1)(d). Lastly, the 2017 Award is binding on Guinea, and it has not been set aside by any French court, which would be the only tribunal competent to do so. *Compare* ECF 3 ¶ 25, *with* New York Convention art. V(1)(e). Nor do either of Article V(2)'s bases for refusing to enforce an award apply to the 2017 Award for the same reasons that they do not apply to the 2020 Award. *See supra* at § II(B).

Finally, while A.D. Trade commenced this action more than three years after 2017 Award was made, the Court should equitably toll the three-year limitations period set forth in 9 U.S.C. § 207 from the time Guinea applied to have the 2017 Award annulled on May 17, 2108, until the time the Paris Court of Appeal denied Guinea's application on April 13, 2021. ECF 3-15 at 15. Through that application, Guinea sought to render the 2017 Award effectively unenforceable anywhere in the world, including in the United States. *See* New York Convention, Art. V(1)(e) ("Recognition and enforcement of the award may be refused" if the award "has been set aside or suspended by a competent authority of the country in which . . . that award was made."); *see also TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d at 938 ("When a competent foreign court has nullified a foreign arbitration award, United States courts should not go behind that decision absent extraordinary circumstances[.]" (internal quotation marks omitted)). Guinea should not now get the benefit of A.D. Trade's having waited for those annulment proceedings to conclude before commencing enforcement proceedings in this Court.

The three-year period set forth in 9 U.S.C. § 207 is not jurisdictional and is subject to equitable tolling.  *See BCB Holdings Ltd. v. Gov't of Belize*, 650 F. App'x 17, 19 (D.C. Cir. 2016).  Because the period should be tolled in this case for a period of almost three years, A.D. Trade's claim for recognition of the 2017 Award is timely.

The Court should therefore confirm the 2017 Award under the New York Convention and 9 U.S.C. § 207, and enter a money judgment in favor of A.D. Trade and against Guinea in the amount of EUR 46,074,463.00 and US $157,402.50, plus the appropriate interest.  *See infra* at Section III (calculating interest).

D.      The 2017 Judgment.

A.D. Trade also seeks recognition of the French court's 2017 Judgment pursuant to the D.C. Recognition Act.

The D.C. Recognition Act provides that any foreign country judgment entitled to recognition under it is "(1) [c]onclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in the District of Columbia would be conclusive; and (2) [e]nforceable in the same manner and to the same extent as a judgment rendered in the District of Columbia."  D.C. Code § 15–367.  The D.C. Circuit has squarely held that the D.C. Recognition Act provides for such relief even where it would be untimely under the FAA to confirm the arbitral award that gave rise to the foreign judgment.  *See Commissions Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d at 328 (finding that the FAA's three-year statute of limitations in 9 U.S.C. § 207 does not preempt the D.C. Recognition Act's 15-year statute of limitations because "[t]he [New York] Convention sets a 'floor' but not a 'ceiling,' for enforcement of arbitral awards").

The D.C. Recognition Act's limitations provision requires only that "[a]n action to recognize a foreign-country judgment must be commenced within the earlier of the time during

which the foreign-country judgment is effective in the foreign country or 15 years from the date that the foreign-country judgment became effective in the foreign country." D.C. Code § 15–369. Here, A.D. Trade seeks recognition of the 2017 Judgment within the D.C. Recognition Act's statute of limitations because the 2017 Judgment is enforceable in France for 10 years from the date of the French exequatur, or from December 8, 2017. *See* Supp. Fischer Decl. ¶ 4. The effect of the French exequatur was to incorporate the 2017 Award into the French legal system so that it can be enforced like other civil French judgments, which permit enforcement for 10 years under Article L.111-4 of the French Civil Enforcement Proceedings Code. *Id.* ¶ 2. Therefore, A.D. Trade can enforce the 2017 Judgment in France for 10 years from the date of its service on Guinea, March 6, 2018. *Id.*

The D.C. Recognition Act applies to the 2017 Judgment because it "(1) [g]rants or denies recovery of a sum of money; and (2) [u]nder the law of the foreign country where rendered, is final; conclusive; and enforceable." *See* D.C. Code § 15–363(a) (internal subdivisions omitted). The D.C. Recognition Act requires recognition of a foreign country judgment to which the Act applies, unless any one of 11 mandatory or discretionary exceptions applies. *Id.* § 15–364(a). The party objecting to the recognition of a foreign country judgment to which the Act applies bears the burden of establishing one of these mandatory or discretionary exceptions. *Id.* § 15–364(d).

Here, the 2017 Judgment grants A.D. Trade a recovery of a sum of money equal to the 2017 Award, which is EUR 46,074,463.00 and US $157,402.50, plus interest. ECF 3-8 at 2. Indeed, "a French decree conferring exequatur on an arbitral award [is] the functional equivalent of a foreign money judgment" because "French courts use the device of exequatur to make a decision of an outside tribunal enforceable in France." *Seetransport Wiking Trader*

*Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 29 F.3d 79, 81 (2d Cir. 1994).

The 2017 Judgment is also "final; conclusive; and enforceable" within the meaning of D.C. Code § 15–363(a).  The French exequatur that forms the 2017 Judgment is final and conclusive because the French courts have not reversed, vacated, or otherwise disturbed it despite Guinea seeking such relief in the Paris Court of Appeal.  ECF 3 ¶¶ 18-19; *see also* ECF 3-14 ¶ 94.  The effect of the French exequatur is also to make the 2017 Award enforceable like other civil French judgments.  *See* ECF 3 ¶ 20 (citing relevant French law); *see also LLC Komstroy v. Republic of Moldova*, No. 14-CV-01921 (CRC), 2018 WL 5993437, at *3 (D.D.C. Nov. 13, 2018) (finding French exequatur made "the 2013 arbitral award . . . immediately enforceable"), *aff'd sub nom. LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871 (D.C. Cir. 2021); *Compagnie D'Enterprises CFE, S.A. v. Republic of Yemen*, 180 F. Supp. 2d 12, 14 (D.D.C. 2001) (noting that an "exequatur from the Tribunal de Grande Instance of Paris . . . constitutes a final decision recognizing the arbitral award" and, "[u]nder French law, . . . is binding and enforceable").

Further, Guinea has not appeared to meet its "burden of establishing . . . a ground for nonrecognition" (*see* D.C. Code § 15–364(d)), and in any event none of the statutory grounds for nonrecognition set forth in D.C. Code § 15–364 apply to the 2017 Judgment.

Moreover, "D.C. public policy would favor or at least stand neutral as to the maneuver" A.D. Trade uses here of "enforc[ing] a foreign judgment that itself enforces a foreign arbitral award" because "[t]he D.C. Court of Appeals holds that D.C. has a strong public policy in favor of arbitration, one that is identical to that expressed in federal law."  *Commissions Imp. Exp., S.A. v. Republic of Congo*, 118 F. Supp. 3d 220, 228-29 (D.D.C. 2015) (citing *Masurovsky v. Green*, 687 A.2d 198, 201 (D.C. 1996)).  As the D.C. Circuit has recognized, the federal policy favoring

arbitration "is not undermined—and frequently will be advanced—through recourse to parallel enforcement mechanisms that exist independently of the FAA." *Commissions Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d at 330.

The Court should therefore enforce the 2017 Judgment pursuant to the D.C. Recognition Act and enter a money judgment in favor of A.D. Trade and against Guinea in the amount of EUR 46,074,463.00 and US $157,402.50, plus the appropriate interest. *See infra* at Section III (calculating interest).

## III.   <u>The Interest Due to A.D. Trade</u>

A.D. Trade respectfully submits that the appropriate interest on the 2017 Award and 2017 Judgment, as well as the 2020 Award, includes pre-award interest, pre-judgment interest and post-judgment interest. The ICC tribunals already calculated any applicable pre-award interest and included it in the Awards, so this Court need only determine the post-award but pre-judgment interest as well as the post-judgment interest.

As the D.C. Circuit explained recently: "Regarding a foreign arbitral award, there are three possible categories of interest: pre-award, prejudgment (i.e., after the arbitration award but before the award is converted into a U.S. judgment) and post-judgment. . . . [C]onfirmation petitions under the New York Convention are 'deemed to arise' under the laws of the United States, 9 U.S.C. § 203, and '[p]rejudgment interest is an element of complete compensation' in U.S. law[.]" *Stileks*, 985 F.3d at 881 (quoting *West Virginia v. United States*, 479 U.S. 305, 310 (1987)). Indeed, "[t]he primary purpose of prejudgment interest is "to compensate the plaintiff for any delay in payment resulting from the litigation," *id*. (quoting *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C. Cir. 1997)), but "especially relevant in the arbitration context" is its purpose of "promot[ing]

settlement and deter[ring] any attempt to benefit unfairly from inevitable litigation delay," *id.* (quoting *Moore v. CapitalCare, Inc.*, 461 F.3d 1, 13 (D.C. Cir. 2006)).

It follows that this Court should apply the pre-judgment interest awarded by the ICC tribunals, as well as post-judgment interest at the federal rate. *See, e.g.*, *BCB Holdings Ltd. v. Gov't of Belize,* 232 F. Supp. 3d 28, 49 (D.D.C. 2017) ("The arbitral tribunal awarded petitioners pre- and post-judgment interest at an annual rate of 3.38% compounded annually. . . . The Court accepts this determination and awards petitioners interest consistent with the Award calculated from the date the Award, August 18, 2009, to this date.").

    A.    <u>The 2017 Award/2017 Judgment</u>.

In the 2017 Award, the ICC tribunal awarded A.D. Trade the following four separate amounts of money damages: "1) EUR 31,906,745 as payment for the services and equipment provided under [Contract Leopard]; 2) EUR 13,782,599 in simple default interest of 10.3% calculated up until October 5, 2016; 3) Capitalized default interest of 10.3% as of October 6, 2016 until the date of payment in full of all amounts due under [part (1), or EUR 31,906,745]; [and] 4) US $157,402.50 for the ICC costs of arbitration and EUR 385,119 for the cost of defence." ECF 3-2 at pp. 68-69.  The amounts awarded under the 2017 Judgment are identical.  ECF 3-8 at 1-2.

Under French law (specifically Article 1343-2 of the French Civil Code), which was the law applied in the arbitration because it was the law chosen in the operative contract (*see* ECF 3-2 ¶ 31), the 10.3% compound interest in part (3) of the 2017 Award/2017 Judgment is calculated yearly, unless the parties agree otherwise.  Supp. Fischer Decl. ¶ 6.  There was no such agreement here.  Accordingly, in confirming the 2017 Award and/or recognizing the 2017 Judgment, this Court should award the post-award or prejudgment interest in part (3) at 10.3% compounded yearly

every October 6 until the date it enters judgment against Guinea.  By way of example, as of June

1, 2022, that post-award or prejudgment interest in part (3) would total <u>EUR 23,667,735.85</u>.[4]

In addition, French law provides for post-award or prejudgment interest on the costs and

fees contained in part (4) of the 2017 Award (US $157,402.50 and EUR 385,119).  The French

Ministry for the Economy and Finance publishes a standard legal interest rate in France, which is

calculated in accordance with the French Monetary and Financial Code.  Supp. Fischer Decl. ¶ 7.

It applies to money judgments entered under French law and is updated every six months.  *Id.*[5]  In

addition, Article L. 313-3 of the French Monetary and Financial Code provides that a creditor may

add 5% to the standard legal interest rate in France starting two months from the date of proper

service of a French judgment.  *Id.*

Here, A.D. Trade obtained the 2017 Judgment on December 8, 2017, and served it on

Guinea on March 6, 2018.  ECF 3-8 at 1–2; *see also* ECF 3 ¶ 20.  Therefore, the standard legal

interest rate in France applies to the costs and fees contained in part (4) of the 2017 Award from

December 8, 2017, with 5% added for period from May 7, 2018, onward.  *See* Supp. Fischer Decl.

---

[4]      If it would be helpful to the Court prior to the entry of a default judgment, A.D. Trade can provide updated interest calculations as of a specific date.

[5]      At the relevant times, the following were the standard legal interest rates in France:

| | |
|---|---|
| July 1, 2017, to December 31, 2017: | 0.90% |
| January 1, 2018, to June 30, 2018: | 0.89% |
| July 1, 2018, to December 31, 2018: | 0.88% |
| January 1, 2019, to June 30, 2019: | 0.86% |
| July 1, 2019, to December 31, 2019: | 0.87% |
| January 1, 2020, to June 30, 2020: | 0.87% |
| July 1, 2020, to December 31, 2020: | 0.84% |
| January 1, 2021, to June 30, 2021: | 0.79% |
| July 1, 2021, to December 31, 2021: | 0.76% |
| January 1, 2022, to June 30, 2022: | 0.76% |

Supp. Fischer Decl. ¶ 8.

¶ 7.  Accordingly, confirming the 2017 Award and/or recognizing the 2017 Judgment, this Court should award and apply the standard legal interest rate in France on the US $157,402.50 and EUR 385,119 in part (4) of the 2017 Award (plus 5%, where appropriate) until the date the Court enters judgment against Guinea.  As of June 1, 2022, that post-award or prejudgment interest for part (4) of the 2017 Award (US $157,402.50 and EUR 385,119) would total <u>US $37,956.30</u> and <u>EUR 92,868.23</u>.

In addition to post-award or prejudgment interest, the Court should award post-judgment interest at the statutory rate under 28 U.S.C. § 1961(a) on the total amount of 2017 Award/2017 Judgment, including any accumulated post-award or prejudgment interest, which, by way of example as of June 1, 2022, is <u>EUR 69,449,948.08</u> and <u>US $195,358.80</u>.  *See Selig v. Islamic Republic of Iran*, No. 1:19-CV-02889-TNM, 2021 WL 5446870, at *25 (D.D.C. Nov. 22, 2021) ("[A]n award of post-judgment interest under this statute is mandatory, not discretionary." (internal quotation marks omitted)).

     B.     <u>The 2020 Award</u>.

As in the 2017 Award, the ICC tribunal in the 2020 Award applied French law, which was the law chosen by the parties in the underlying agreement.  *See* ECF 3-17 ¶ 15.  The tribunal found Guinea liable to A.D. Trade in the 2020 Award for a principal amount of US $5,061,854.00, as well as costs of US $232,000.00 "with interest at the legal rate under French law from the date of the receipt of this Award and until full payment."  ECF 3-17 at pp. 57–58.  Guinea, which participated in the ICC arbitration through its counsel DLA Piper, *id.* ¶¶ 7, 18, received the 2020 Award on the date of its issuance, February 3, 2020.  Accordingly, in confirming the 2020 Award, this Court should award and apply post-award interest at the standard interest rate under French Law until the date the Court enters judgment against Guinea.  By way of example, as of June 1,

2022, that post-award or prejudgment interest on the principal amount of US $5,061,854.00 would total <u>US $94,295.65</u>, and on the costs amount of US $232,000.00 would total <u>US $4,317.02</u>.

In addition to post-award, prejudgment interest, the Court should award post-judgment interest at the statutory rate under 28 U.S.C. § 1961(a) on the total amount of 2020 Award, including any accumulated post-award prejudgment interest, which, for example, would be <u>US $5,392,466.67</u> as of June 1, 2022.  *See Selig v. Islamic Republic of Iran*, 2021 WL 5446870, at *25.

<u>**CONCLUSION**</u>

For the foregoing reasons, A.D. Trade respectfully requests that the Court enter a money judgment against Guinea in favor of A.D. Trade and against Guinea in the total amounts awarded under the 2017 Award and 2017 Judgment, as well as under the 2020 Award, plus appropriate interest.

[SIGNATURE BLOCK ON NEXT PAGE]

Respectfully submitted,

Dated: June 11, 2022
      Washington, D.C.

/s/ Josef M. Klazen
Josef M. Klazen
D.C. Bar No. 1003749
Steven G. Kobre
D.C. Bar No. 448923
Darryl G. Stein
D.D.C. Bar No. NY0338
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
+1 212 488 1200
josef.klazen@kobrekim.com
steven.kobre@kobrekim.com
darryl.stein@kobrekim.com

Geoffrey J. Derrick
D.C. Bar No. 242467
KOBRE & KIM LLP
1919 M Street NW
Washington, DC 20036
+1 202 664 1900
geoffrey.derrick@kobrekim.com

*Attorneys for Plaintiff*
*A.D. TRADE Belgium S.P.R.L.*