UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **A.D. TRADE BELGIUM S.P.R.L.,** )<br>)<br>**Plaintiff/Petitioner,** )<br>)<br>v. )<br>)<br>**REPUBLIC OF GUINEA,** )<br>)<br>**Defendant/Respondent.** ) | **Civil Case No. 22-245 (RJL)** |

## MEMORANDUM OPINION
(March 31, 2023) [Dkt. #17]

A.D. Trade Belgium S.P.R.L. prevailed in two separate French arbitrations against the Republic of Guinea. The company petitioned this Court to confirm both awards, and it demanded recognition of a French judgment enforcing the older of the two awards. Guinea failed to appear, and so A.D. Trade has moved for default judgment. For the following reasons, A.D. Trade's Motion for Entry of Default Judgment will be GRANTED.

### BACKGROUND

**I.    Factual Background**

A.D. Trade is a Belgian company that sells military and security equipment and services. Fischer Decl. Ex. B ("2017 Award") [Dkt. #3-2] ¶¶ 1–3. It entered into several agreements with the Republic of Guinea, two of which led to arbitration awards that it seeks to confirm in this action.

The first agreement, referred to as "Contract Leopard," was executed in January 2011 and called for A.D. Trade to equip and train a new intelligence service for the newly elected president. *Id.* ¶¶ 33, 49–50. Contract Leopard provided for all disputes arising

from the contract to be arbitrated before the International Chamber of Commerce in Paris. Fischer Decl. Ex. D ("Contract Leopard") [Dkt. #3-4] ¶ 9.1. Guinea failed to make any payments under the contract, so A.D. Trade initiated arbitration in October 2015. 2017 Award ¶¶ 6, 81–99. The arbitration panel issued an award in A.D. Trade's favor on November 22, 2017. *Id.* at 70.[1] Referred to as the "2017 Award," it awarded €45,689,344 in damages on which interest would accrue at 10.3 percent as of October 6, 2016, $157,402.50 in arbitration costs, and €385,119 in attorneys' fees. *Id.* at 69–70.

In December 2017, A.D. Trade sought to enforce the 2017 Award in France's Tribunal de grande instance de Paris. Fischer Decl. Ex. G ("2017 Judgment") [Dkt. #3-7] at 2; Fischer Decl. Ex. H [Dkt. #3-8] at 2. The next day, the French court issued an order called an "exequatur" declaring the award enforceable, referred to as the "2017 Judgment." 2017 Judgment at 67; Fischer Decl. Ex. H at 3. After being served with the 2017 Judgment, Guinea filed an appeal for annulment with the Cour d'appel de Paris in May, and the court denied the appeal in April 2021. Fischer Decl. Ex. O [Dkt. #3-15] at 3–4, 16.

The second agreement, called the "Elephant Protocol," derived from a separate contract that was executed in June 2011 and provided for Guinea to acquire a military aircraft and to receive related training, parts, and services from A.D. Trade. Fischer Decl. Ex. Q ("2020 Award") [Dkt. #3-17] ¶¶ 91–92. Save for a partial payment in mid-2015, Guinea did not make any payments under that contract, and in June 2015 the parties executed the Elephant Protocol, which provided for a new payment schedule. *Id.* ¶¶ 132–

---

[1] When this Memorandum Opinion cites page numbers of exhibits to the Fischer Declaration, it refers to the page numbers that appear in the ECF stamp at the top of each page.

134. Like Contract Leopard, the Elephant Protocol provided for all disputes arising from the agreement to be arbitrated before the International Chamber of Commerce in Paris. Fischer Decl. Ex. S ("Elephant Protocol") [Dkt. #3-19] ¶¶ 5.1–5.4.

After Guinea failed to pay under the Elephant Protocol, A.D. Trade initiated arbitration in November 2016. 2020 Award ¶¶ 8, 148. In what is referred to as the "2020 Award," dated February 3, 2020, the arbitration panel declared the Elephant Protocol invalid as prohibited by a European Union embargo on arms sales to Guinea, but it held that A.D. Trade was entitled to restitution of $5,061,854 because the unfortunate destruction of the aircraft in 2013 made it impossible to return. *Id.* ¶¶ 124, 184–186, 210, 314–316; *id.* at 58–59. Because of the agreement's invalidity, the panel declined to award interest for late performance of obligations that never should have been performed. *Id.* ¶ 317. It also ordered Guinea to pay $232,000 in arbitration costs with interest to accrue at the standard French rate from the date of receipt of the award. *Id.* at 59.

## II.   Procedural History

On January 31, 2022, A.D. Trade petitioned this Court to confirm both arbitration awards under the New York Convention. Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 [hereinafter New York Convention]; Compl. [Dkt. #1] ¶¶ 57–62, 70–75. It also sought recognition of the 2017 Judgment under the D.C. Uniform Foreign-Country Money Judgments Recognition Act of 2011 (Recognition Act), D.C. Code §§ 15-361 to -371. Compl. ¶¶ 63–69. Guinea never appeared, so A.D. Trade requested and obtained an entry of default from the Clerk of the Court. Request for Entry of Default [Dkt. #15]; Default [Dkt. #16]. It then moved for

3

entry of a default judgment. Mot. for Entry of Default J. [Dkt. #17]; Pl.'s Mem. of Law in Supp. of Mot. for Entry of Default J. ("Mot.") [Dkt. #17-1].

## LEGAL STANDARD

Default judgment against a foreign state is warranted only if a movant "establishes [its] claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). That burden is not particularly onerous: "§ 1608(e) does not 'require the court to demand more or different evidence than it would ordinarily receive'; indeed, 'the quantum and quality of evidence that might satisfy a court can be less than that normally required.'" *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017) (citations omitted), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020). A court "may accept the plaintiff's uncontroverted factual allegations if they are supported by documentary and affidavit evidence." *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 161 (D.D.C. 2013) (Contreras, J.).

## DISCUSSION

### I.  Jurisdiction

Before entering a default judgment, "the Court must—at a minimum—satisfy itself that it has subject-matter jurisdiction over the claims and personal jurisdiction over the defendants." *Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 336 (D.D.C. 2020) (Moss, J.). The Court has both here.

### A.  Subject Matter Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1330(a). That provision "confers jurisdiction on district courts to hear suits brought by United States citizens and

4

by aliens when a foreign state is *not* entitled to immunity." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Under the Foreign Sovereign Immunities Act, a foreign state is immune from the jurisdiction of courts in the United States unless a statutory exception applies. 28 U.S.C. § 1604; *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 690 (D.C. Cir. 2022).

The arbitration exception easily applies here. Mot. at 10–11. Under that exception, a foreign state is not immune from jurisdiction in an action "to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). For the exception to apply, A.D. Trade must establish three jurisdictional facts: the existence of an arbitration agreement, an arbitration award, and a treaty governing the award. *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021). As to the first two facts, A.D. Trade has shown the existence of two arbitration agreements with Guinea (Contract Leopard and the Elephant Protocol) and two arbitration awards against Guinea (the 2017 Award and the 2020 Award). Contract Leopard ¶ 9.1; Elephant Protocol ¶¶ 5.1–5.4; 2017 Award at 2; 2020 Award at 2. As to the last fact, the New York Convention, as codified in the Federal Arbitration Act, governs any "arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial," unless the relationship is between U.S. citizens and lacks other significant foreign connection. 9 U.S.C. § 202. Contract Leopard and the Elephant Protocol no doubt established a "legal relationship" between A.D. Trade and Guinea, *Diag Hum., S.E. v. Czech Republic–*

*Ministry of Health*, 824 F.3d 131, 135 (D.C. Cir. 2016), and that relationship is "commercial," a term that is given the broadest possible meaning, *Belize Soc. Dev. Ltd. v. Government of Belize*, 794 F.3d 99, 103–04 (D.C. Cir. 2015). Finally, the subject matter is not domestic in scope, because the action arises from agreements between a Belgian company and a foreign sovereign. 9 U.S.C. § 202. The arbitration exception thus applies.[2]

### B. Personal Jurisdiction

The Court likewise has personal jurisdiction over Guinea. Personal jurisdiction over a foreign state exists when a court has subject matter jurisdiction and service has been made in compliance with 28 U.S.C. § 1608. 28 U.S.C. § 1330(b). Section 1608, in turn, sets forth "four methods of service in descending order of preference." *Barot v. Embassy of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015). According to A.D. Trade, the first two methods were unavailable, Mot. at 12,[3] so it opted for the third method, which allows "sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state." 28 U.S.C. § 1608(a)(3).

A.D. Trade did just that, causing the Clerk of the Court to send those documents (and French translations of each) to the head of Guinea's ministry of foreign affairs via

---

[2] The Court therefore need not decide whether, as A.D. Trade argues, the implied waiver exception also applies. 28 U.S.C. § 1605(a)(1); Mot. at 9–10.

[3] A.D. Trade could establish its prima facie showing of personal jurisdiction by resting on that representation. *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).

FedEx, at four different addresses. Certificate of Mailing [Dkt. #11]; Return of Service [Dkt. #12]; *see Barot*, 785 F.3d at 29–30. The Court therefore has personal jurisdiction.

## II. Merits

### A. 2017 Award

The 2017 Award will be confirmed. As discussed above as to subject matter jurisdiction, the 2020 Award falls under the New York Convention, which means it should be confirmed "unless [the court] finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Those grounds "are tightly construed, and the burden is placed on the party opposing enforcement." *Diag Hum., S.E. v. Czech Republic–Ministry of Health*, 907 F.3d 606, 609 (D.C. Cir. 2018). "Given [Guinea]'s default status in this case, it obviously has not put forth any arguments against confirmation." *Sterling Merch. Fin. Ltd. v. Republic of Cabo Verde*, 261 F. Supp. 3d 48, 53 (D.D.C. 2017) (Huvelle, J.).

A.D. Trade also argues that, notwithstanding its failure to petition this Court for confirmation within three years after the 2017 Award was made in November 2017, 9 U.S.C. § 207, the time to file was equitably tolled between the time Guinea filed its appeal for annulment in May 2018 until the Cour d'appel de Paris denied it in April 2021. Mot. at 18–19. The Court need not decide that question, however, because Guinea, as an absent defendant, has forfeited a statute-of-limitations defense, and the Court may not raise it sua sponte. *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1109 (D.C. Cir. 2019). Accordingly, the Court will confirm the award.

### B.     2017 Judgment

The Court will also recognize the 2017 Judgment under the Recognition Act, which applies to any foreign-country judgment that grants or denies money; is final, conclusive, and enforceable; and is not a judgment regarding taxes, fines or other penalties, or a domestic matter. D.C. Code § 15-363(a)–(b).[4] The 2017 Judgment fits within that definition. It granted the money awarded to A.D. Trade in the 2017 Award. 2017 Judgment at 66–67. It is also final, conclusive, and enforceable. *Seetransport Wiking Trader v. Navimpex Centrala*, 29 F.3d 79, 81 (2d Cir. 1994) (assessing French exequatur under New York law). Finally, the 2017 Judgment does not pertain to taxes, fines or other penalties, or a domestic matter. 2017 Award ¶¶ 29–30. When, as here, the Recognition Act applies, "a court of the District of Columbia shall recognize [the] foreign-country judgment," unless the party resisting recognition shows an exception applies. D.C. Code § 15-364. With Guinea's absence from this action, it has not met its burden. The Court therefore will recognize the 2017 Judgment.

### C.     2020 Award

The 2020 Award will also be confirmed, for the same reasons as the 2017 Award. As discussed above, the 2020 Award falls under the New York Convention, so it should be confirmed "unless [the court] finds one of the grounds for refusal or deferral of recognition

---

[4] Unlike the petition to confirm the 2017 Award, the action to recognize the 2017 Judgment would not run into statute-of-limitations issues even if Guinea were here to raise such a defense, because the Recognition Act's limitations period is the shorter of the effective term of the foreign judgment or fifteen years after the foreign judgment became effective. D.C. Code § 15-369. The effective term of the 2017 Judgment is ten years. Code des procédures civiles d'exécution [C.P.C.E.] [Code of Civil Enforcement Procedures] art. 111-4.

or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Because Guinea, as an absent defendant, has not put forth any arguments against confirmation, the Court will confirm the award.

## III. Prejudgment Interest

With respect to the 2017 Award and the 2017 Judgment, A.D. Trade asks for 10.3 percent prejudgment interest on damages (consistent with the arbitrators' award), plus interest on costs and fees under French law. Mot. at 23–25. But federal law governs confirmation of the 2017 Award and thus governs the award of prejudgment interest. *Stileks*, 985 F.3d at 881. The same should be true of D.C. law as it pertains to the 2017 Judgment. *Embassy of Nigeria v. Ugwuonye*, 945 F. Supp. 2d 81, 86 (D.D.C. 2013) (Rothstein, J.). After all, the effect of the Recognition Act is essentially to convert the foreign judgment into a D.C. one. D.C. Code § 15-367(2).

Under both federal and D.C. law, the award of prejudgment interest "is generally a matter of discretion." *Miminco, LLC v. Democratic Republic of the Congo*, 79 F. Supp. 3d 213, 218 (D.D.C. 2015) (Contreras, J.); *accord Burke v. Groover, Christie & Merritt, P.C.*, 26 A.3d 292, 306 (D.C. 2011). As such, the Court will deny prejudgment interest on the 2017 Award and the 2017 Judgment. Awarding interest would be difficult to square with the high likelihood that A.D. Trade's petition to confirm the 2017 Award would be time-barred had Guinea appeared in this litigation. Without faulting A.D. Trade's conduct here, the Court has concerns that the award of interest, combined with the limitations-extending effect of the D.C. Recognition Act, could incentivize a similarly situated plaintiff to sit on a foreign judgment to allow interest to accrue at some astronomical rate provided in an

underlying arbitration award or by foreign law, then come to court years later to have it recognized.

As for the 2020 Award, A.D. Trade seeks prejudgment interest on both restitution and arbitration costs at the standard French rate, consistent, it claims, with what the arbitration panel ordered. Mot. at 25–26. It is only partially correct. Interest on restitution was specifically declined by the arbitration panel, 2020 Award ¶ 317, and "[a] court may not award pre-judgment interest when the arbitration tribunal has determined that such interest is not available." *Miminco*, 79 F. Supp. 3d at 218. Prejudgment interest on the arbitration costs, however, is "consistent with the underlying arbitration award," *Stileks*, 985 F.3d at 881, which called for interest to accrue at the standard French rate starting on the date of receipt of the award, February 3, 2020. 2020 Award at 59–60. A.D. Trade is thus entitled to that interest between February 3, 2020, and today.

A.D. Trade will be ordered to submit to the Court proposed judgment amounts calculated with prejudgment interest consistent with this Memorandum Opinion.[5]

## CONCLUSION

For the foregoing reasons, plaintiff/petitioner A.D. Trade's Motion for Entry of Default Judgment [Dkt. #17] will be GRANTED. An order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge

---

[5] A.D. Trade will, of course, also be entitled to *post*-judgment interest on all amounts, which "must be imposed on 'any money judgment in a civil case recovered in a district court.'" *Miminco*, 79 F. Supp. 3d at 218 (quoting 28 U.S.C. § 1961(a)).